No. 4966.

(Court of Appeal, Parish of Orleans.)

## MYLES PLANTING AND MANUFACTURING COMPANY vs. A. D. GEOHAGAN & COMPANY.

Dart & Kernan for plaintiff and appellant.

T. M. & J. D. Miller for defendant and appellee.

ST. PAUL, J.—Under the Statute of 1898, No. 126, a dealer in commercial fertilizer must furnish the Commissioner of Agriculture with a sample of any fertilizer he proposes to sell, which sample must be analysed by the chemist of the department, and the result of the analysis must appear on the tag attached to every package of such fertilizer thereafter sold, and this constitutes a guarantee by the vendor to the purchaser that the fertilizer is of the quality indicated.

Whenever such fertilizer is sold and delivered an official inspector must be notified, who must take samples thereof and forward the same to the commissioner for

analysis. But the Statute is silent as to the manner in which such samples shall be taken, preserved and forwarded to the Commissioner, or such analysis be made, or the effect thereof when made, whether as evidence or otherwise.

Defendant is a dealer in cotton seed products, including cotton seed meal to be used as a fertilizer, and although he sells the fertilizer outright, he holds himself out as a commission merchant or broker carrying no stock, but he sells and makes deliveries to the purchaser direct from the mills in this and neighboring States.

In this way he sold to plaintiff certain quantities of cotton seed meal guaranteed to contain eight per cent of ammonia. The meal was delivered and paid for and the inspectors notified. The meal was received by plaintiff from the cars and placed in the ground with such dispatch that in some instances the inspectors were unable to obtain samples. Afterwards plaintiff claimed a deficiency in ammonia and accompanied its claim by certificates of analysis from the agricultural department.

Defendant asked for samples; none were furnished him by plaintiff, and, after efforts had been made to adjust the matter amicably, this suit followed, which is for the reduction and refund of the price paid in the proportion which the deficiency in ammonia bears to the total price paid for the meal.

There was considerable evidence taken but none as to the time and manner in which samples were taken and transmitted to the argicultural department, or by whom. In this respect there is no connection whatsoever between the analysis made at Baton Rouge and the cotton seed meal sold to plaintiff.

We might, perhaps, assume that the public officials did their duty and sampled the shipments, but here all presumptions end. There is no presumption as to the manner in which they did it, and as the statute fails to pre-

scribe the manner of taking and preserving samples, proof should have been adduced as to how this was done, showing the time when the samples were taken, the number and quantity thereof, and how preserved and transmitted to the department; to the end that the Court might judge whether the result of the analysis showed fairly and truly the condition of the meal at the time it was delivered to plaintiff.

Other deficiencies in proof might, also, be pointed out, but this is sufficient to require a nonsuit.

But we are of opinion that defendant is entitled to an absolute judgment as allowed by the Court a qua.

The record satisfies us that plaintiffs were requested at the time of sale to keep samples of each shipment; that samples of the shipments other than those forwarded to Baton Rough were taken and analyzed for plaintiff by a chemist other than the official chemist, and this chemist was not produced; and that the samples sent to Baton Rouge were not taken, or, at least, not sent to Baton Rouge, immediately on the arrival of the shipments. We do not think that these samples represented fairly the condition of the meal when received by plaintiff.

June 7, 1910.

Judgment affirmed.